1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                        CENTRAL DISTRICT OF CALIFORNIA
10
11  ROY KLEVENO,                        )    Case No. ED CV 12-769-SP
                                        )
12                  Plaintiff,          )
                                        )
13          v.                          )    MEMORANDUM OPINION AND
                                        )    ORDER
14  CAROLYN W. COLVIN, Acting           )
15  Commissioner of Social Security     )
    Administration,                     )
16                                      )
                    Defendant.          )
17                                      )
18  _____    )

19                                 **I.**

20                            **INTRODUCTION**

21          On May 17, 2012, plaintiff Roy Kleveno filed a complaint against the

22  Commissioner of the Social Security Administration ("Commissioner"), seeking a

23  review of a denial of a period of disability, disability insurance benefits ("DIB"),

24  and supplemental security income ("SSI").  Both plaintiff and defendant have

25  consented to proceed for all purposes before the assigned Magistrate Judge

26  pursuant to 28 U.S.C. § 636(c).  The court deems the matter suitable for

27  adjudication without oral argument.

28

1   Plaintiff presents four issues for decision:  (1) whether the Administrative
2   Law Judge ("ALJ") properly considered the opinion of treating physician, Dr.
3   Stephen Estes; (2) whether the ALJ gave the proper weight to the opinions of
4   examining and State Agency physicians; (3) whether the ALJ properly considered
5   the opinion of a lay witness; and (4) whether the ALJ properly discounted
6   plaintiff's credibility.  Memorandum in Support of Plaintiff's Complaint ("P.
7   Mem.") at 6-25; Memorandum in Support of Defendant's Answer and in
8   Opposition to Plaintiff's Memorandum in Support of Complaint ("D. Mem.") at 2-
9   10.
10   Having carefully studied, inter alia, the parties's moving papers, the
11   Administrative Record ("AR"), and the decision of the ALJ, the court concludes
12   that, as detailed herein, the ALJ:  (1) failed to properly consider the treating
13   physician's opinion; (2) properly considered the opinions of the examining and
14   State Agency physicians, except to the extent he accepted the State Agency
15   physician's opinion regarding plaintiff's ability to stand and walk; (3) failed to
16   properly consider the lay witness testimony; and (4) discounted plaintiff's
17   credibility based on reasons that were not entirely clearly and convincing.
18   Therefore, the court remands this matter to the Commissioner in accordance with
19   the principles and instructions enunciated in this Memorandum Opinion and
20   Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

23   Plaintiff, who was fifty-two years old on the date of his December 28, 2010
24   administrative hearing, has a GED.  AR at 32, 154, 164.  Plaintiff has past relevant
25   work as an owner of a gem and mineral shop, jewelry store manager, and
26   subcontractor for cement masonry work.  *Id.* at 53-54
27   On May 26, 2009, plaintiff filed an application for a period of disability and
28

DIB and an application for SSI, alleging an onset date of May 5, 2009, due to a heart attack. *Id.* at 140-41, 144-51, 159. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which he filed a request for a hearing. *Id.* 69-73, 76-81.

On December 28, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 32-59. The ALJ also heard testimony from James Constant, a lay witness, and Troy Scott, a vocational expert. *Id.* 50-57. On January 11, 2011, the ALJ denied plaintiff's claim for benefits. *Id.* at 18-28.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since May 5, 2009, the alleged onset date. *Id.* at 20

At step two, the ALJ found that plaintiff suffered from the following severe impairments: acute myocardial infarction and heart failure. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 21.

The ALJ then assessed plaintiff residual functional capacity ("RFC"),[1] and determined that he had the RFC to perform a significant range of light work with the following restrictions: lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk six hours out of an eight-hour workday with a sit/stand

---

[1]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

1    option; sit for two hours in an eight-hour workday; and avoid exposure to
2    unprotected heights and dangerous machinery. *Id.*

3        The ALJ found, at step four, that plaintiff was capable of performing his
4    past relevant work as a jewelry store manager and jewelry store owner. *Id.* at 26.

5        The ALJ also made an alternative, step five finding that there are other jobs
6    existing in significant numbers in the national economy that plaintiff can also
7    perform, including electronic worker, cashier, and packing machine operator. *Id.*
8    at 26-27.

9        Consequently, the ALJ concluded that plaintiff did not suffer from a
10   disability as defined by the Social Security Act. *Id.* at 27-28.

11       Plaintiff filed a timely request for review of the ALJ's decision, which was
12   denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final
13   decision of the Commissioner.

### III.

### STANDARD OF REVIEW

16       This court is empowered to review decisions by the Commissioner to deny
17   benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security
18   Administration must be upheld if they are free of legal error and supported by
19   substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
20   (as amended). But if the court determines that the ALJ's findings are based on
21   legal error or are not supported by substantial evidence in the record, the court
22   may reject the findings and set aside the decision to deny benefits. *Aukland v.*
23   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
24   1144, 1147 (9th Cir. 2001).

25       "Substantial evidence is more than a mere scintilla, but less than a
26   preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such
27   "relevant evidence which a reasonable person might accept as adequate to support

1  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

2  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

3  finding, the reviewing court must review the administrative record as a whole,

4  "weighing both the evidence that supports and the evidence that detracts from the

5  ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

6  affirmed simply by isolating a specific quantum of supporting evidence.'"

7  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

8  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

9  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

10  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

11  1992)).

12  **IV.**

13  **DISCUSSION**

14  **A.**   **Not All of the Reasons the ALJ Provided for Discounting Plaintiff's**

15  **Credibility Were Clear and Convincing**

16  Plaintiff argues that the ALJ failed to make a proper credibility finding.  P.

17  Mem. at 22-25.  Specifically, plaintiff contends that the ALJ's three reasons for an

18  adverse credibility finding were not clear and convincing.  *Id.*

19  The ALJ must make specific credibility findings, supported by the record.

20  Social Security Ruling ("SSR") 96-7p.[2]  To determine whether testimony

21  concerning symptoms is credible, the ALJ engages in a two-step analysis.

22  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ

23

24       [2]   "The Commissioner issues Social Security Rulings to clarify the Act's
implementing regulations and the agency's policies.  SSRs are binding on all

25  components of the SSA.  SSRs do not have the force of law.  However, because
they represent the Commissioner's interpretation of the agency's regulations, we

26  give them some deference.  We will not defer to SSRs if they are inconsistent with
the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th

27  Cir. 2001) (internal citations omitted).

28

must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in weighing a claimant's credibility, including:  (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found that plaintiff's medically determinable impairments could reasonably be expected to cause the statements alleged.  AR at 23.  At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility.  The ALJ discounted plaintiff's credibility because: (1) plaintiff failed to report all of his earnings; (2) plaintiff made inconsistent statements about why he stopped working; and (3) his daily activities were inconsistent with his alleged symptoms.[3]  *Id.* at 21-23.

---

[3]    Although the ALJ characterized plaintiff's treatment as conservative and cited the conservative treatment as a basis for rejecting the opinion of the treating physician, he did not expressly cite conservative treatment as a ground to discount plaintiff's credibility.  *See* AR at 25; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

6

The ALJ's first ground for discounting plaintiff's credibility was his failure to report earnings between 1985-1990 and in 2008. *Id.* at 21-22. The failure to comply with law and report income may be a legitimate reason to find a claimant less credible. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (failure of claimant to report income on his income taxes "could justify a more skeptical view of his testimony"); *see also James v. Astrue*, No. 11-01471, 2012 WL 3206690, at *6 (C.D. Cal. Aug. 6, 2012) (finding the failure to report income to the IRS was a clear and convincing reason to reject claimant's credibility).

The ALJ correctly noted that plaintiff worked as a subcontractor between 1985 and 1990, and that his DIB Insured Status Report reflected zero income for that period. AR at 153, 166. At the hearing, plaintiff testified that he reported the earnings, but the IRS claimed to not have received them. *Id* at 40-41. Plaintiff further testified that he hired an attorney to handle the tax matter and it was determined that he owed no taxes. *Id.* at 41. Although plaintiff offered an explanation as to why the record reflected zero earnings from 1985 through 1990, there was no evidence in the record to support his explanation. As such, the ALJ's finding was supported by substantial evidence. *See Aukland*, 257 F.3d at 1035 ("'If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.'") (citation omitted).

The evidence concerning plaintiff's 2008 earnings is similarly conflicting. There are again records to show that, although plaintiff owned his own retail business (apparently a mall kiosk) in 2008, his DIB Insured Status Report shows no earnings for 2008. AR at 153, 166; *see id.* at 41-42. The ALJ stated that plaintiff testified that he made $3000 per month while self-employed, but failed to report any income in 2008. AR at 21-22. The ALJ's assessment did not accurately represent plaintiff's testimony. Plaintiff ran a mall kiosk in 2008 and a jewelry store from January through early May 2009. *Id*. at 40-41, 43. Plaintiff

testified that in April 2009, after his mother was diagnosed with stage four cancer, he decided to close his store, which was "not doing the $3,000-a-month business," and go back to work part-time for his former employer. *Id.* at 40. Although the testimony was not a model of clarity, plaintiff did not testify that he made $3000 per month while running the kiosk. Instead, he testified that he "made approximately $3,000 . . . for . . . two months," which can be interpreted as either that he made $3,000 a month for two months or that he made $3000 in two months. *See id.* at 43. Plaintiff then testified that he reinvested the money and subsequently the kiosk failed to make money. *Id.* If plaintiff's kiosk did not result in net earnings, as he implied in his testimony, then he would not have had income to report. Plaintiff offered to provide the ALJ his tax forms from 2008 as clarification, but the ALJ declined. *Id.* Again, because the documentary evidence reasonably supported the ALJ's finding and the testimonial evidence did not, the court finds this reason to be supported by substantial evidence. *See Aukland*, 257 F.3d at 1035.

The ALJ's second ground for discounting plaintiff's credibility was not supported by substantial evidence. The ALJ stated that plaintiff provided inconsistent testimony about why he stopped working, reporting in his application that he stopped working due to his heart condition but testifying that he stopped because his mother was ill. *Id.* at 21-22. Again, the ALJ misconstrued plaintiff's statements.

Plaintiff made three statements as to why he closed the store and/or stopped working. In his Disability Report, plaintiff reported that he stopped working due to his heart attack and "cannot run the business." *Id*. at 159. Plaintiff later reported to a hospital, upon admission for chest pain, that the economic downturn caused him to lose his store. *Id*. at 288. During the hearing, plaintiff testified that he closed the store because he needed to take care of his sick mom and the store

was not doing well as planned, and that he intended to work part-time at his former place of employment. *Id.* at 40. None of these reasons were inconsistent. Plaintiff chose to close the store and take care of his mother because the store was not making as much money as expected. *See id.* And plaintiff testified that prior to his heart attack, he intended to work part-time once he closed his store. Thus, both plaintiff's mother's illness and the economy played into his decision to close the store, and his subsequent heart attack prevented him from returning to work as planned following the closing of his store. *See id.* Because this testimony was not inconsistent, it was not a valid ground for discounting plaintiff's credibility.

The third ground provided for an adverse credibility hearing was plaintiff's daily activities. *Id*. at 22-23. The ALJ argued that plaintiff's daily activities were inconsistent with his alleged symptoms and established that he was capable of working. *Id.* Specifically, the ALJ noted that plaintiff engaged in activities which required the same physical abilities necessary for employment, including taking care of his personal hygiene, cooking, doing some household chores, driving, feeding his dog, and riding a bicycle. *Id.* The ALJ also noted that plaintiff's activities contradicted his testimony. *Id.* at 22.

Inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant less credible. *Tommasetti*, 533 F.3d at 1039 ; *Bunnell*, 947 F.2d at 346-47. But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, plaintiff's ability to care for himself, do some household chores, cook, and drive was not inconsistent with his alleged symptoms and did not suggest that

he was capable of working. Plaintiff spent about thirty minutes a day cooking and fifteen to twenty minutes a day cleaning or doing laundry. AR at 197. Even when taken together, these were not significant amounts of time devoted to cooking and cleaning. Moreover, plaintiff stated that he did not do any other major household chores. *Id.* None of these daily activities, in duration or exertion level, suggested that plaintiff could work an eight-hour day. Plaintiff's bicycle exercise, pursuant to his doctor's recommendations, may, however, be relevant. *See id.* at 45. If plaintiff is able to engage in bicycle riding without fatigue, that would diminish plaintiff's credibility. Yet, the ALJ failed to ask plaintiff how long he rode his exercise bicycle, his exertion level, or if he required rest breaks. Nor did plaintiff volunteer this information.

Further, although plaintiff's testimony was not entirely consistent with his previous statements, the inconsistencies were minor. As the ALJ noted, plaintiff reported that he could only lift approximately two pounds, yet he could wash pots and pans. *Id*. at 22, 159. The ALJ also noted that contrary to plaintiff's statements that he got tired when he exerted himself and could only walk for ten to fifteen minutes, he testified that he walked around the block twice daily and rode an exercise bicycle. *Id.* at 22, 177. None of these possible inconsistencies are significant. With regard to lifting, even assuming that pots and pans weigh more than two pounds, most are not significantly heavier than two pounds. As for plaintiff's ability to walk around the block and use the exercise bicycle, plaintiff also reported that he got winded from the walks, required rest, and often took a nitroglycerine pill to help with the pain. *Id.* at 177, 200. And as discussed *supra*, plaintiff never testified as to the duration of his bicycle exercise.

In sum, because there was evidence that plaintiff failed to comply with the law by reporting his earnings in some years, this was a clear and convincing reason to discount plaintiff's credibility, but the ALJ's remaining reasons were

1    not.  The court need not decide whether the ALJ's credibility determination

2    remains legally valid despite the errors, because the court is remanding the

3    decision on other grounds discussed *infra*.  This remand will provide the ALJ the

4    opportunity to further inquire about plaintiff's reporting of income and obtain any

5    evidence plaintiff has to offer regarding his income.

6    **B.    The ALJ Erred in Part in His Consideration of the Medical Opinions**

7           Plaintiff complains that the ALJ failed to properly consider the opinion of

8    his treating, examining, and State Agency physicians.  P. Mem. at 6-18.

9    Specifically, plaintiff argues that:  the ALJ failed to provide specific and

10   legitimate reasons for rejecting his treating physician's opinion; the ALJ should

11   not have given significant weight to the examining physician's opinion; and

12   without the examining physician's opinion, the State Agency physician's opinion

13   did not constitute substantial evidence.  *Id.*

14          In determining whether a claimant has a medically determinable

15   impairment, among the evidence the ALJ considers is medical evidence.  20

16   C.F.R. §§ 404.1527(b), 416.927(b).  In evaluating medical opinions, the

17   regulations distinguish among three types of physicians:  (1) treating physicians;

18   (2) examining physicians; and (3) non-examining physicians.  20 C.F.R.

19   §§ 404.1528(c),(e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

20   1995) (as amended).  "Generally, a treating physician's opinion carries more

21   weight than an examining physician's, and an examining physician's opinion

22   carries more weight than a reviewing physician's."  *Holohan*, 246 F.3d at 1202; 20

23   C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).  The opinion of the treating

24   physician is generally given the greatest weight because the treating physician is

25   employed to cure and has a greater opportunity to understand and observe a

26   claimant.  *Smolen*, 80 F.3d at 1285; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

27   Cir. 1989).

28

1    Nevertheless, the ALJ is not bound by the opinion of the treating physician.

2  *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the

3  ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,

4  81 F.3d at 830.  If the treating physician's opinion is contradicted by other

5  opinions, the ALJ must provide specific and legitimate reasons supported by

6  substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide

7  specific and legitimate reasons supported by substantial evidence in rejecting the

8  contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a

9  non-examining physician, standing alone, cannot constitute substantial evidence.

10  *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.*

11  *Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d

12  813, 818 n.7 (9th Cir. 1993).

13      **1.    Medical History**

14      On May 5, 2009, plaintiff was admitted to the St. Bernardine Medical

15  Center after developing shortness of breath and chest pain.  AR at 222-23.  Dr.

16  Stephen J. Estes, a cardiologist, treated plaintiff.  *Id.*  Tests showed that plaintiff

17  had a totally occluded left anterior descending artery ("LAD") and a 50-50%

18  circumflex stenosis in the right.  *Id.*  Dr. Estes placed a stent in the LAD.  *Id.* at

19  227.  Subsequent tests showed that plaintiff had poor left ventricular function with

20  diffuse hypokinesis and an ejection fraction around 20-25%.[4]  *Id.*  Dr. Estes

21  diagnosed plaintiff with acute anterior wall myocardial infarction, ventricular

22

23  ───────────────

24      [4]    Ejection fraction is a "measurement of how much blood the left ventricle
    pumps out with each contraction."

25  http://www.heart.org/HEARTORG/Conditions/HeartFailure/SymptomsDiagnosiso

26  fHeartFailure/Ejection-Fraction-Heart-Failure-Measurement_UCM_306339_Artic
    le.jsp.  A normal heart's ejection fraction is between 50%-70%.  *Id.*  An ejection

27  fraction between 40% and 55% indicates damage.  *Id.*  An ejection
    fraction under

28  40% may be evidence of heart failure or cardiomyopathy.  *Id.*

fibrillation arrest and respiratory failure secondary to the myocardial infarction, congestive heart failure, and poor left ventricular function.  *Id.* at 228.

Dr. Estes continued to treat plaintiff after the heart attack, examining him once every three months.[5]  *See id.* at 328-30, 357-60.  During the follow up appointments, plaintiff complained of chest pain, shortness of breath, fatigue, and right hip pain.  *See id.*  The objective findings regarding the heart and lungs were within normal limits, but Dr. Estes observed that plaintiff had difficulty walking without getting short of breath.  *See id.*  Dr. Estes could not determine the cause of the chest pain or shortness of breath, but opined that plaintiff's poor left ventricular function and ejection fraction may have been the cause.  *Id.* at 360.  Dr. Estes further opined that plaintiff's condition was stable, but that he had significant limitations in his ability to work due to his fatigue, shortness of breath, and chest pain.  *Id.* at 357, 359.  Dr. Estes treated plaintiff with a variety of medications.  *See, e.g., id*. at 328.

On June 22, 2009, plaintiff was admitted to Riverside Community Hospital due to chest pain.  *Id.* at 288-96.  Dr. Kaustubh V. Patankar, a cardiologist, performed a left heart catheterization,[6] left ventriculography, coronary angiography, and abdominal aortic angiography with bilateral iliac angiography.  *Id.* at 297-98.  Dr. Patankar observed that plaintiff had a left ventricular ejection fraction of 40% with anteroapical hypokinesis,[7] a stent in the proximial LAD, and a 100% occluded ostial iliac artery.  *Id.* at 297.  Based on these tests, Dr. Patankar

---

[5]    As of the hearing date, Dr. Estes decided to examine plaintiff on a six-month rather than three-month basis.  AR at 38.

[6]    It appears that Dr. Patankar may have conducted an angioplasty at this time.  *See id.* at 368.

[7]    An earlier test conducted by Riverside Community Hospital showed an estimated left ventricular ejection fraction of 37%.  *Id.* at 299.

recommended that plaintiff return on a later day to try to open up the iliac artery.[8] *Id.*

On August 28, 2009, Dr. Bahaa Girgis, a consulting internist, examined plaintiff.[9] *Id.* at 307-12. Dr. Girgis reviewed plaintiff's medical records from his May 2009 admission at St. Bernardine Medical Center, but based his opinion on the examination alone. *Id.* at 308-09. Dr. Girgis observed that plaintiff had good air movement in the lungs, a normal regular heart beat, and a normal gait. *Id.* at 309-11. Dr. Girgis opined that plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk four hours in an eight-hour day, and sit six hours in an eight-hour day. *Id.* at 312. On September 9, 2009, Dr. R. Jacobs, a State Agency physician, concurred with the majority of Dr. Girgis's opinion, but opined that plaintiff stand/walk for six hours in an eight-hour workday. *Id.* at 318-24.

On November 7, 2010, plaintiff was once again admitted to Riverside Community Hospital for chest pain. *Id.* at 364-65. Dr. Patankar indicated plaintiff had been readmitted to the hospital a few months prior.[10] *Id.* at 368. Dr. Patankar ordered a cardiac Lexiscan, which showed, inter alia, a fixed defect suggestive of areas of peri-infarct ishcemia and an ejection fraction of 47%. *Id.* at 368, 429.

### 2. **Dr. Estes**

Dr. Estes did not opine specific limitations for plaintiff, only that plaintiff had "significant limitations" and could not return to work at the time. *Id.* at 357,

---

[8]  The record does not contain any evidence that plaintiff returned to Dr. Patankar for this procedure.

[9]  Plaintiff complained that Dr. Girgis did not know his name and did not have his medical records. AR at 329.

[10]  The record does not contain any notes from this purported hospital admission.

14

59.  The ALJ gave little weight to the opinion of Dr. Estes on the basis that his opinion was not supported by objective evidence, was inconsistent with the record as a whole, and was inconsistent with plaintiff's daily activities.  *Id.* at 25.  On balance, these reasons were not supported by substantial evidence.

First, lack of objective medical evidence may be a legitimate basis to reject a treating physician's opinion.  "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."  *Tommasetti*, 533 F.3d at 1041; *Morgan*, 169 F.3d at 602 (a physician's opinion that is "'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted'") (quoting *Fair*, 885 F.2d at 605).

Here, the ALJ correctly noted that Dr. Estes's opinion was based, in large part, on plaintiff's subjective complaints rather than objective findings and that he treated plaintiff conservatively.  *See* AR at 25.  During his examinations, which occurred once every three months, the objective findings were normal.  *See, e.g., id.* at 328-30.  Although not entirely bereft of objective evidence – plaintiff had poor ventricular function, a below normal ejection fraction, and was observed getting short of breath while walking in Dr. Estes's office – there were few objective and clinical findings.  *See id.* at 227, 359.  And despite Dr. Estes's concerns, he felt treatment with medication was sufficient and determined that he only needed to examine plaintiff once every six months.  *See, e.g., id.* at 357-59.  Because Dr. Estes's opinion was premised primarily on plaintiff's subjective complaints, which were partially properly discounted, lack of objective findings and conservative care were proper bases to reject Dr. Estes's opinion.

But the ALJ incorrectly concluded that Dr. Estes's opinion was inconsistent with the overall record.  *Id.* at 25.  The record shows that subsequent to his heart attack, plaintiff was admitted to the hospital on at least two occasions for chest pain.  *Id*. at 288-96; 364-65.  During the first admission in June 2009, Dr. Patankar

15

1   performed several procedures and observed that plaintiff had a left ventricular

2   ejection fraction of 40% with anteroapical hypokinesis and a 100% occluded ostial

3   iliac artery. *Id.* at 297. Dr. Patankar recommended that plaintiff return to open up

4   his iliac artery. *Id.* During the November 2010 admission, tests showed a fixed

5   defect suggestive of areas of peri-infarct ishchemia and an ejection fraction of 47%.

6   *Id.* at 429. Thus, contrary to the ALJ's determination, the record as a whole

7   offered objective findings to support Dr. Estes's opinion.

8          In addition, the ALJ found that Dr. Estes's opinion was inconsistent with

9   plaintiff's daily activities. *Id.* at 25. As discussed above, plaintiff's daily

10  activities were not inconsistent with his symptoms.

11         On balance, the ALJ erred in rejecting Dr. Estes's opinion that plaintiff had

12  limitations in his ability to work.[11] Although Dr. Estes observed few objective and

13  clinical findings during his examinations to support his opinion, the overall record

14  contained objective findings. And plaintiff did not engage in daily activities

15  inconsistent with Dr. Estes's opinion. Therefore, the ALJ's determination was not

16  supported by substantial evidence.

17         **3.    Dr. Girgis and Dr. Jacobs**

18         The ALJ gave significant weight to Dr. Girgis and Dr. Jacobs. *Id.* at 25.

19  Plaintiff argues that the ALJ should not have given significant weight to Dr.

20  Girgis's opinion because he offered an opinion without reviewing plaintiff's

21  medical records. P. Mem. at 15-16. Without Dr. Girgis's opinion, Dr. Jacob's

22  opinion would not constitute substantial evidence. *Id.* at 17.

23         Plaintiff is partially correct that Dr. Girgis did not review his medical

24  records. *Id.* at 15-16. Dr. Girgis only reviewed plaintiff's hospital records from

25  his admission at St. Bernardine Medical Center in May 2009, but did not review

26

27         [11]   The court notes, however, that Dr. Estes did not specify what limitations

28  plaintiff had.

additional records from Riverside Community Hospital or Dr. Estes.  AR at 308-09.  Nevertheless, plaintiff is incorrect that the ALJ should not have given great weight to Dr. Girgis's opinion.  Dr. Girgis conducted an independent examination of plaintiff, which by itself constitutes substantial evidence.  *See Tonapetyan*, 242 F.3d at 1149; *see also* AR at 307-12.

As for Dr. Jacobs's opinion, had it been identical to Dr. Girgis's opinion, it could constitute substantial evidence.  *See Lester*, 81 F.2d at 831 (stating that the opinion of a nonexamining doctor, by itself, did not constitute substantial evidence).  But in reaching his RFC determination, the ALJ rejected Dr. Girgis's opinion that plaintiff was limited to standing and/or walking four hours out of an eight-hour workday and relied on Dr. Jacobs's opinion that plaintiff could stand and/or walk six hours out of an eight-hour workday.  AR at 25.  The ALJ offered no explanation for why he rejected that aspect of Dr. Girgis's opinion.  Because only Dr. Jacobs opined this lesser restriction, this part of his opinion did not constitute substantial evidence.

Further, contrary to the opinions of Dr. Girgis and Dr. Jacobs, to which he purportedly gave "significant weight," the ALJ determined that plaintiff could sit for two hours, rather than six hours out of an eight-hour day, on the basis that the medical records support such a finding.  AR at 25.  There is no evidence to support the ALJ's determination.

Accordingly, the ALJ erred because he failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Estes's opinion, and because he adopted Dr. Jacobs's opinion that plaintiff could stand and/or walk six hours a day when that opinion was not supported by substantial evidence.  But the ALJ did not err by giving significant weight to Dr. Girgis's opinion.

1   **C.**   **The ALJ Failed to Provide Germane Reasons for Rejecting the Opinion**
2   **of a Lay Witness**

3       Plaintiff argues that the ALJ failed to properly consider the opinion of a lay
4   witness, James Constant.  P. Mem. at 18-22.  Specifically, plaintiff complains that
5   the three reasons offered by the ALJ for rejecting Constant's testimony were not
6   germane.  *Id.*  The court agrees.

7       "[L]ay testimony as to a claimant's symptoms or how an impairment affects
8   ability to work *is* competent evidence and therefore *cannot* be disregarded without
9   comment."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal
10  quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see*
11  *also* 20 C.F.R.§§ 404.1513(d)(4), 416. 913(d)(4) (explaining that the
12  Commissioner will consider all evidence from "non-medical sources[,]" including
13  "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors,
14  and clergy").  The ALJ may only discount the testimony of lay witnesses if he
15  provides specific "reasons that are germane to each witness."  *Dodrill v. Shalala*,
16  12 F.3d 915, 919 (9th Cir. 2003); *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th
17  Cir. 2011) ("Lay testimony as to a claimant's symptoms is competent evidence
18  that an ALJ must take into account, unless he or she expressly determines to
19  disregard such testimony and give reasons germane to each witness for doing
20  so.").

21      In a Third Party Function Report, Constant, plaintiff's domestic partner,
22  indicated that plaintiff fed the dogs, spent approximately thirty minutes preparing
23  simple meals, did some laundry, picked up after cooking, shopped for groceries
24  but tired quickly when doing so, talked with people daily, could not walk very far
25  before needing to rest, and tired easily.  AR at 203-10.  Subsequently, at the
26  hearing, Constant testified that he helped plaintiff on a daily basis with lifting and
27  household chores.  *Id.* at 50.  Constant further explained that plaintiff had good
28  and bad days, and the bad days occurred a couple of times a week.  *Id.* at 52.

18

1   Here, the ALJ discounted Constant's testimony on the bases that "the
2   opinion of a layperson is far less persuasive . . . than . . . the opinions of medical
3   professionals[,]" he was biased, and his testimony was not supported by medical
4   evidence. *Id.* at 23.

5   The ALJ's first reason – Constant is not a medical professional – was not
6   germane to Constant.  Although, an ALJ may reject lay testimony if it conflicts
7   with medical evidence, he may not discount lay testimony solely on the basis that
8   it is lay testimony. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)
9   (explaining that an ALJ is required to consider the testimony of a lay witness); *see*
10  *also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Otherwise, an ALJ
11  can dismiss all lay testimony without consideration.

12  Similarly, the ALJ's rejection of Constant's testimony on the ground that, as
13  plaintiff's domestic partner, Constant was biased also "amount[s] to a wholesale
14  dismissal of the testimony of all [lay] witnesses as a group and therefore does not
15  qualify as a reason germane to" Constant. *Smolen*, 80 F.3d at 1289.

16  Finally, the ALJ's third reason for rejecting Constant's testimony is not
17  supported by substantial evidence.  The ALJ stated that Constant's statements
18  were not supported by "any clinical or diagnostic medical evidence."  AR at 23.
19  But as discussed above, multiple tests showed that plaintiff had poor left
20  ventricular function and below average ejection fraction. *Id.* at 227, 297, 299,
21  429.  Based on various procedures, Dr. Patankar determined that plaintiff should
22  undergo a procedure to open up his iliac artery. *Id.* at 297-98.  Dr. Estes observed
23  that plaintiff had shortness of breath easily. *Id.* at 359.  Thus, there was both
24  clinical and diagnostic medical evidence to support Constant's testimony.

25  In short, the ALJ erred when he rejected Constant's testimony without
26  offering reasons germane to Constant and supported by substantial evidence.

27

28

19

# V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred by failing to properly consider the opinions of plaintiff's treating physician and lay witness, and by accepting the unsupported opinion of Dr. Jacobs. On remand, the ALJ shall: (1) reconsider the opinion of Dr. Estes, and either credit his opinion or provide specific and legitimate reasons for rejecting it; (2) reconsider the opinion of Dr. Jacobs regarding plaintiff's ability to stand and/or walk, and either cite evidence to support the opinion or reject it; (3) reconsider the opinion of lay witness Constant, and either credit his opinion or provide a reason germane to him for rejecting it; and (4) reconsider plaintiff's credibility, ensuring that the record is fully developed, including by obtaining documentation concerning plaintiff's earnings in 2008 and any new medical notes. *See Antoniewicz v. Astrue*, 371 Fed. Appx. 854, 856 (9th Cir. 2010) (noting that the ALJ requested that claimant's counsel produce claimant's bank records to show her earnings in order to determine her eligibility). The ALJ shall then proceed through steps four and five

to determine what work, if any, plaintiff is or was capable of performing and for what period of time.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: April 16, 2013

_____
SHERI PYM
United States Magistrate Judge